HOUSTON & TEXAS CENTRAL RAILROAD COMPANY ET AL. V. G. W. GRAY.

Decided February 8, 1905.

**1.—Negligence—Definition—Harmless Error.**

Charge held not to constitute reversible error, though giving inaccurate definitions of negligence and ordinary care.

**2.—Charge—Connecting Carriers—Loss on Other Lines.**

Instructions considered and held not to make the initial carrier. who had limited his liability to loss upon his own lines, liable for injuries by default of the connecting carriers, when such charge was construed in connection with various other instructions given.

**3.—Carrier—Delay—Evidence.**

Evidence considered and held to present sufficient proof that delay in the transportation of cattle by stoppages at various points upon the line was due to defendant's negligence to warrant the submission of that issue.

**4.—Charge—Carriage of Live Stock—Incidental Injuries.**

Instruction considered and held to present the law relieving a carrier of live stock from injuries ordinarily incident to their transportation by rail, and rendering it unnecessary to give further requested instructions on the subject.

**5.—Carriage of Life Stock—Care Assumed by Shipper—Charge.**

Instructions relieving the carrier from damages caused by cattle getting down and being trampled during transportation, where the shipper had undertaken to care for them en route, held properly refused, because upon the weight of evidence and so far as correct being covered by other instructions given.

Appeal from the District Court of Llano County. Tried below before Hon. Clarence Martin.

*S. R. Fisher,* for appellant.—In determining the question of negligence vel non the test is what an ordinarily prudent person would or would not do under the same or similar circumstances, and to define negligence as was done in the charge complained of is clearly erroneous, because, in addition to charging that negligence is the doing or the failure to do what an ordinarily prudent person would or would not do under similar circumstances, it further charges that it is the doing or the failure to do what a person of ordinary prudence and intelligence would or would not do. Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 350; Houston & T. C. Ry. Co. v. Sgalinski, 19 Texas Civ. App., 107, 46 S. W. Rep., 113.

Ordinary care is such care as a person of ordinary prudence, or an ordinarily prudent person, would use under the same or similar circumstances, and a definition which requires in addition that it must be such care as a person of ordinary prudence and intelligence would use is incorrect and misleading.

Plaintiff sought recovery against three carriers whose railways constituted the line of transit between the originating point and the delivery point, and the pleading and the evidence showing that each of said defendants, by express contract and agreement, was liable only for the injuries sustained by the animals while on its line, no recovery could be had against any defendant except for loss or damage occurring upon its line, and the court, in paragraphs two, three and four of its charge, having advised the jury as to the injuries alleged to have been sustained by the stock on the line of the Houston & Texas Central Railroad Company, and on the lines of the Missouri, Kansas & Texas Railway Companies, it was affirmative error for the court to instruct the jury, as was done in paragraph twelve of this charge, that if plaintiff's animals were injured through the negligence of the defendants, or any of them, in the particulars, or any of them, recited in paragraphs two, three and four of the charge, to return a verdict for the plaintiff, because under said charge the defendant, the Houston & Texas Central Railroad Company, would be liable for any injury or loss that might have been sustained upon the lines of the Missouri, Kansas & Texas Railway Companies, and the said Missouri, Kansas & Texas Railway Companies, for any loss or injury that might have been sustained by said animals on the line of the Houston & Texas Central Railroad Company, notwithstanding the fact that each of said railway companies, by express contract stipulation, could only be made liable for loss or injury sustained upon its line through its negligence, and further, because each of said railway companies would be liable for the negligence of the other without regard to the line or lines upon which the loss or injury may have been sustained. Baker v. Ashe, 80 Texas, 361; International & G. N. Ry. Co. v. Lehman, 66 S. W. Rep., 215; Gulf, C. & S. F. Ry. Co. v. White, 32 S. W. Rep., 322; Harter v. City of M—, 36 S. W. Rep., 294; Texas M. Ry. Co. v. Taylor, 44 S. W. Rep., 892; Houston & T. C. Ry. Co. v. Kimbell, 43 S. W. Rep., 1049.

The court erred in said paragraph of its charge because the same submits to the jury as an issue the question whether or not the two Missouri, Kansas & Texas Companies negligently caused the cars containing plaintiff's cattle to be left stationary upon the tracks, side tracks, and at

other places, there being no evidence that either of said defendants was guilty of negligence in said particulars. Texas P. Ry. Co. v. Wisenor, 66 Texas, 675; Houston & T. C. Ry. Co. v. Gilmore, 62 Texas, 391; Galveston, H. & S. A. Ry. Co. v. Faber, 63 Texas, 344; O'Dair v. Missouri, K. & T. Ry. Co., 14 Texas Civ. App., 541, 38 S. W. Rep., 242; Gulf, C. & S. F. Ry. Co. v. Vieno, 7 Texas Civ. App., 350, 26 S. W. Rep., 231; Cook v. Dennis, 61 Texas, 248.

If, in the transportation of plaintiff's cattle from Llano to Wynona, they were not jostled, jammed, bruised or otherwise injured, more than was ordinarily incident to the transportation of live stock by rail, then plaintiff was not entitled to recover, and the jury should have been so instructed.

The undisputed evidence disclosing that plaintiff's cattle were shipped from Llano, Texas, to Wynona, Indian Territory, under and pursuant to special contracts in writing, requiring plaintiff to load, unload and reload, and to feed, water and care for his stock en route, plaintiff would not be entitled to recover for any injury which may have been sustained by said cattle getting down and being trampled upon, and the jury should have been instructed as requested by special instruction number four.

*Flack & Dalrymple* and *Chas. L. Lauderdale,* for appellee.—Negligence, want of due care, is the failure to do that which a person of ordinary prudence and intelligence would do, or the doing of that which such person would not do, under the same or similar circumstances. Rost v. Missouri P. Ry. Co., 76 Texas, 172; Texas & N. O. Ry. Co. v. Black, 44 S. W. Rep., 673; 2 Wood's Ry. Law, p. 1074, sec. 301; 2 Thompson, Neg., p. 1149, sec. 4, citing Brown v. Milwaukee, etc., Ry. Co., 22 Minn., 165, 166; Northern C. Ry. Co. v. State, 96 Am. Dec., 545; Webster's Dict.—"Intelligence, syn. Understanding, Caution."

Under the statute authorizing suit against several connecting carriers for damages to live stock, and providing that the damages recovered shall be apportioned against them by the verdict and judgment, where plaintiff has sued several such connecting carriers it is proper for the court to enumerate to the jury the several grounds or acts of negligence alleged, and to sustain which sufficient evidence has been introduced, telling the jury, in general terms, that, if such acts of negligence, or any of them, have been established by the evidence, and if they, or any of them, have produced injury as alleged, to find generally for the plaintiff; that neither of the defendants can be held liable for any act or acts of negligence on the part of the others, or of any or either of them (where the undertaking of the several defendants is several, separate and individual only), nor liable for carriage beyond its own line, nor for any injury to any freight occurring on the line of another carrier, telling the jury, further, that if, as to any one or more of the defendants, the jury finds that the evidence is insufficient to establish the acts of negligence charged against it, or that, if established, such negligence produced no injury complained of, it must find for that defendant, and, so instructing the jury as to each of the defendants, directing the jury to apportion the damages, by its verdict, against the several defendants, if they find against more than one of them, in proportion to the inju-

ries caused by their respective negligence.  Gulf, C. & S. F. Ry. Co. v. Wilson, 79 Texas, 374; Houston & T. C. Ry. Co. v. Kelly, 34 S. W. Rep., 809, 13 Texas Civ. App., 15; Baker v. Ashe, 80 Texas, 361.

If the court, after having, in its general instructions, told the jury that it could not find anything against the defendants, or any or either of them, unless for some act or acts of negligence charged in the petition and established against such defendant or defendants, erred in refusing to give defendants' special charge, such error was cured by the special instruction given at defendants' request.

EIDSON, ASSOCIATE JUSTICE.—This was a suit by appellee against the Houston & Texas Central Railroad Company, the Missouri, Kansas & Texas Railway Company of Texas and the Missouri, Kansas & Texas Railway Company, the last two being sued as partners, to recover damages alleged to have been sustained on account of alleged negligence of the defendants, appellants, in transporting a shipment of cattle from Llano, Texas, to Wynona, Indian Territory.  The cattle were shipped under two special contracts in writing, one between the appellee and the Houston & Texas Central Railroad Company, for carriage from Llano to Elgin, and the other between him and the Missouri, Kansas & Texas Railway Company, for carriage from Elgin to Wynona.

The Houston & Texas Central Railroad Company interposed a general demurrer and general denial, and specially pleaded the existence of a contract in writing, under which the cattle were received and shipped by it, which, among other things, relieved defendant from any liability for loss or damage that might occur after the stock should leave its line; and further alleging that whatever, if any, damage was sustained by appellee, occurred after the stock had passed out of its custody and beyond its line.

The answers of the two Missouri, Kansas & Texas Railway Companies consisted of a general demurrer and general denial.

The trial resulted in a verdict and judgment for appellee against the Houston & Texas Central Railroad Company for $192.39, and against the Missouri, Kansas & Texas Railway Company of Texas and the Missouri, Kansas & Texas Railway Company, jointly and severally, for $813.61.

Appellants, by their first and second assignments of error, complain of the charge of the court defining negligence and ordinary care.  The charge of the court defining negligence is as follows: "Negligence is the failure to do that which a person of ordinary prudence and intelligence would do under the same or similar circumstances, or the doing of that which a person of ordinary prudence and intelligence would not do under the same or similar circumstances."  And the charge defining ordinary care is as follows: "Ordinary care is such care as a person of ordinary prudence and intelligence would use under the same or similar circumstances."  This court has held that such definitions of negligence and ordinary care are not accurate, but that they do not constitute reversible error.  (Houston & T. C. Ry. Co. v. Brown, 11 Texas Ct. Rep., 777; Houston & T. C. Ry. Co. v. Kathmann, 11 Texas Ct. Rep., 714.)

Appellants' third assignment of error complains of the twelfth para-

graph of the court's charge upon the ground that the same authorizes the jury to find in favor of plaintiff against the Houston & Texas Central Railroad Company for loss or injury occurring on the lines of the Missouri, Kansas & Texas Railway Companies; and against said companies for loss or injury sustained on the line of the Houston & Texas Central Railroad Company, notwithstanding the fact that each of said railway companies, by express contract stipulation, could only be made liable for loss or injury sustained upon its line through its negligence; and because said paragraph of the court's charge authorized the jury to find against each of said companies for the negligence of the other, without regard to the line or lines upon which the loss or injury might have been sustained. The twelfth paragraph of the court's charge is as follows:

"12.—If you believe from the evidence that on the 9th day of April, 1904, the plaintiff delivered at Llano, Texas, to the Houston & Texas Central Railroad Company, defendant, the cattle described in his petition, for transportation by it to Elgin, Texas, to be there delivered to the defendant, Missouri, Kansas & Texas Railway Company of Texas for further transportation to Wynona, Indian Territory, and that said cattle were at Elgin, aforesaid, by said Houston & Texas Central Railroad Company, delivered to the defendant, Missouri, Kansas & Texas Railway Company of Texas, and by it received for transportation by it, or by its partner, the defendant Missouri, Kansas & Texas Railway Company, to Wynona; and if you further believe from the evidence that the defendants, or any or either of them, were guilty of the acts, or any of the acts, of negligence in the preceding paragraphs of this charge, numbered 2, 3 and 4, specified as complained of and alleged by plaintiff, and that, by reason of such act or acts of negligence, if any such there were, the plaintiff's cattle, or any of them, were hurt and injured, as in said paragraphs stated to have been alleged by plaintiff; and if you further believe from the evidence that, by reason of such hurts and injuries to said cattle, if any such there were, some of said cattle were caused to die, and that they and others of said cattle were, by reason of such hurts and injuries, if any such there were, reduced in their reasonable cash market value at the time when and in the condition in which they were actually delivered to plaintiff at Wynona, below what such value would have been at said place when and in the condition in which they would have been there delivered to the plaintiff but for such hurts and injuries, if any such there were, then you will find in favor of the plaintiff; and, if you find in favor of the plaintiff, you will assess his damages at the difference between what you believe from the evidence was the reasonable cash market value of those of said cattle that were actually delivered to plaintiff at the time and place when, and in the condition in which, they were actually delivered to him, and what you believe from the evidence would have been the reasonable cash market value at Wynona of those of said entire lot of cattle so delivered at Llano to the Houston & Texas Central Railroad Company that would have been, but for such act or acts of negligence, if any such there were, delivered to plaintiff at Wynona, at the time when and in the condition in which they would have been there delivered to plaintiff but for such act or acts

of negligence, if any such act or acts of negligence there were, together with interest on the amount of such difference at the rate of six percent per annum from the time when said cattle were actually delivered to plaintiff at Wynona to the date of your verdict."

And paragraphs 2, 3 and 4 of the charge referred to by the court, in paragraph 12, are as follows:

"2.—Plaintiff alleges that, after said cattle were delivered to the defendant, Houston & Texas Central Railroad Company, and by it accepted for such transportation, it negligently permitted and caused the cars in which it was carrying said cattle, and while containing said cattle, to be left stationary upon its tracks, side-tracks and switches, at Llano, and at other places between Llano and Elgin, and to be moved, hauled and handled at and between said points in a negligently rough manner, and at a negligently slow rate of speed, and thereby caused said cattle to be greatly delayed before beginning its actual run from Llano to Elgin, and between said points, and thereby also negligently caused said cattle to be jammed together and thrown down in and bruised by the cars, and by falling and trampling upon and otherwise bruising one another. 

"3.—Plaintiff also alleges that the defendant, Missouri, Kansas & Texas Railway Company of Texas, negligently caused and permitted the cars in which said cattle were being carried, and while in its possession, or while in the possession of and being carried by its partner, and while containing said cattle between Elgin and Wynona aforesaid, to be moved at a negligently slow rate of speed, to be left stationary upon the tracks, side-tracks, and at other places, and to be negligently and roughly hauled and handled, jerked and bumped together, thereby causing said cattle to be thrown down in the cars and bruised against the same, and to be thrown down upon and to bruise and maim one another.

"4.—Plaintiff alleges that, by reason of the said alleged acts of negligence on the part of the defendants, all of said cattle were so hurt and injured that seven head of said cattle were caused to die, and did die, from the effects of such hurts and injuries, and that the value of said seven head was entirely lost to plaintiff; and that, by reason of the alleged hurts and injuries to the other eight hundred and twenty-one head of said cattle their reasonable cash market value at the said destination, Wynona, when and in the condition in which they were actually delivered to plaintiff, was reduced to the extent of an average of $5 per head below what it would have been had not such alleged negligence on the part of the defendants not occurred; and the plaintiff further alleges that the said seven head of cattle alleged to have died from such injuries would, at Wynona, aforesaid, when and in the condition in which they would have been there delivered to him but for said alleged negligence on the part of the defendant, have been of the average cash market value of $30 per head, except one head thereof, and that said one head would, at same time and place, and in such condition in which it would have been so delivered, of the reasonable cash market value of $25. Plaintiff sues the defendants for the alleged value of the seven head of cattle alleged to have died from such alleged hurts and injuries,

and for the alleged reduction in value of the others of said cattle alleged to have been caused by such alleged negligence, and for interest."

The court also instructed the jury as follows; "No common carrier can be held liable or bound to carry beyond its own line, and no common carrier can be held liable or bound for any injury to any freight occurring on the line of another carrier, unless it has specially contracted for carriage of such freight beyond its own line. But if two or more carriers be engaged in business as such carriers as partners, and as such partners undertake the carriage of freight over one or more lines of railway, then both are liable on such undertaking as common carriers. The Missouri, Kansas & Texas Railway Company of Texas and the Missouri, Kansas & Texas Railway Company, defendants, are partners. . . . If you find any damages in favor of the plaintiff, and if you believe from the evidence that the defendant Houston & Texas Central Railroad Company alone was guilty of the negligence which caused such damages as you may so find, then you will return your verdict against said. defendant alone, and in favor of both of the other defendants. If you find any damages in favor of the plaintiff, and if you believe from the evidence that the defendant Missouri, Kansas & Texas Railway Company of Texas, and the Missouri, Kansas & Texas Railway Company, or either of them, were guilty of the negligence which caused such damages as you may so find, and that the defendant Houston & Texas Central Railroad Company was not guilty of any negligence causing or contributing to cause the damage which you may so find, then you will return your verdict in favor of the last-named defendant, and against the defendants Missouri, Kansas & Texas Railway Company of Texas and the Missouri, Kansas & Texas Railway Company."

The court also gave the jury appropriate instructions as to the proper apportionment of the damages found, if any, against all the appellants; and, at the request of appellants, gave the following two special charges, numbered 5 and 6 respectively:

"If from the evidence you believe that, through the negligence of the defendants, or either of them, plaintiff's cattle were injured in some or all of the particulars alleged by the plaintiff, then you are instructed that the respective defendants herein would be liable only for the damage or injury occurring upon its own line, and from its own negligence, if such negligence was the direct and proximate cause thereof."

And, "If from the evidence you believe that the plaintiff is entitled to recover herein from all of the defendants, then you are instructed that it is your duty to determine the damage occasioned by the defendants severally, and so state in your verdict. If from the evidence you conclude that the plaintiff is entitled to recover against one or more of said defendants, then you will state in your verdict which defendant or defendants, and the amount found against it; and as to the defendant or defendants against whom you find no damage, you will return a general verdict for such defendant or defendants."

We think that the paragraph of the charge complained of, when construed in connection with the other paragraphs of the charge quoted, and the special instructions given at the request of appellants, is not subject to the criticism of appellants; and that such instructions, when

construed together, properly guard and protect the respective rights of appellants.

By their fourth assignment of error, and the proposition submitted thereunder, appellants complain of the twelfth paragraph of the court's charge, upon the ground that the same submits to the jury as an issue the question, whether or not the two Missouri, Kansas & Texas Companies negligently caused the cars containing plaintiff's cattle to be left stationary upon the tracks, side-tracks, and at other places, there being, as claimed by appellants, no evidence that either of said defendants was guilty of negligence in said particulars. We do not agree with appellants in their contention that there is no evidence in the record authorizing the submission to the jury of the issue mentioned. We think the following testimony of the appellee, which appears in the record, sufficient to justify the court in submitting to the jury said issue. The appellee testified:

"After the cattle were delivered to the second defendant they were about a day and a night in going one hundred miles. . . . The train moved just sorter like it did from here (Llano) to Austin. Lots of times it was not moving at all, and sometimes it was moving tolerably well. Then, when they could cut them in two (that is, the train of cattle) up there, it was the same thing as it was from here down to Austin; they would cut them half in two, and then run back and run together; then is when the jar would come, and this coupling up and jars bruised the cattle up mighty bad. . . . The bruising occurred by jamming the cars together, which jammed the cattle against the car. This jamming the cattle against one another and the car had a pretty bad effect on them. It bruised the cattle up; I reckon it hurt them, of course. That last hundred miles up there was the worst part of it; that was on the "Katy." There was a whole lot of the cattle bruised; there was half of them bruised up pretty badly. When these cattle were delivered to me at Wynona they were in pretty bad condition; they looked bad—weak. They looked pretty generally out of whack. They looked weak and bad, just like anything else that had been starved three days and nights. . . . We arrived at Fort Worth about midnight on the second night after we left here (Llano). We got there about midnight on the 10th, then unloaded, and the cattle were in the pens about five or six hours. They began loading about daylight, I think it was—about an hour and a half loading—and they pulled out of the stock pens, I think it was about eight o'clock, then that switching. I suppose they had to get around other trains. They were standing on the side-tracks to get out on the main line. This took a right smart little while; I think it was about an hour or an hour and a half getting around them, till we started out of Fort Worth. . . . The ordinary time for the carriage of cattle between Llano and Wynona, or that distance, by railway transportation, is about twenty-five or thirty hours. . . . They were about forty-five hours (en route) longer than they ought to be."

The evidence shows that the Missouri, Kansas & Texas Railway Companies received the cattle at Elgin, and transported them to their destination.

Appellants' fifth assignment of error complains of the refusal of the court to give to the jury their special instruction number 3, which is

as follows: "If from the evidence you believe that, while being transported from Llano to Wynona, plaintiff's cattle were not jostled, jammed, bruised, or otherwise injured more than is ordinarily incident to the transportation of livestock by rail, then you are instructed to return a verdict for defendants."

The court, in its charge, instructed the jury that they could not find anything against the defendants, or any or either of them, unless for some act or acts of negligence charged in the petition and established by the evidence against such defendant or defendants; and, in addition thereto, at the request of appellants, gave them the following special instruction: "You are instructed that the plaintiff can recover nothing for so much, if any, of the damage, if any, to his stock, as may have been caused by the inherent vice of said stock, or by their natural character and condition, or to treatment to which they had been subjected before being loaded, or on account of being overloaded, if they were overloaded, or by the usual and ordinary course of their transportation by rail, without negligence on the part of the railroad company or companies; and, in making up your verdict, you will allow plaintiff nothing for any damage which you may believe from the evidence was caused by the inherent vice of said stock, or by their natural character and condition, or by the treatment to which they had been subjected before being loaded, or on account of being overloaded, if you find they were overloaded, *or by the usual and ordinary course of their transportation by rail,* without negligence on the part of the railroad company or companies," which, in our opinion, was sufficient upon the issue to which the special charge refused related; and hence it was not error to refuse same.

Appellants, by their sixth assignment of error, complain of the action of the court in refusing to give their special instruction number 4, which is as follows: "You are instructed that, under the undisputed evidence, plaintiff shipped his cattle from Llano, Texas, to Wynona, Indian Territory, under and pursuant to special contracts in writing, requiring the plaintiff to load, unload and reload, and feed, water and care for said stock en route; and if you believe from the evidence that plaintiff's cattle were injured, and that such injury, in whole or in part, resulted from the cattle, or some of them, getting down and being trampled, then you are instructed that the plaintiff, having agreed to look after and care for his cattle en route, can not recover for injuries, if any, that may have occurred to any of them from getting down or being trampled upon while being carried in the cars."

There was no error in the refusal of the court to give to the jury this special instruction, because it is upon the weight of the evidence, and because, insofar as appellants were entitled to a charge upon the issue to which their special charge related, the court gave, at their instance, the following special charge to the jury: "The testimony, without conflict, affirmatively shows that the cattle in question were transported from Llano, Texas, to Wynona, Indian Territory, under special contracts in writing, one made and entered into between the plaintiff and the defendant Houston & Texas Central Railroad Company, providing for the transportation of said cattle from Llano to Elgin, Texas, and there to be delivered to its next connecting carrier, the Missouri, Kansas & Texas

Railway Company of Texas; and the other made and entered into between the Missouri, Kansas & Texas Railway Company of Texas and the plaintiff, at Elgin, Texas, providing for the further transportation and shipment of said cattle from said Elgin station, over the line of said road of the said Missouri, Kansas & Texas Railway Company of Texas, and of the Missouri, Kansas & Texas Railway Company, to Wynona, Indian Territory, providing in terms that the plaintiff, in person, or by his agent or agents, should accompany the stock, load, unload and reload the same, and feed and water the same en route; and if from the evidence you believe that the cattle were in a drawn and enfeebled condition when they reached their destination, and that such condition, in whole or in part, was attributable to the failure, if any, of the plaintiff to properly care for, feed and water, and to load, unload and reload the said cattle, then you are instructed that the plaintiff can not recover for any damage or injury which may have resulted from said failure, if any," which was sufficient.

We find that there is sufficient evidence in the record to support the verdict and judgment as to the amounts found and adjudged against the appellants respectively.

There being no reversible error pointed out in the record, the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.